PEARSON, J.
 

 His Honor was of opinion, that, by reason of the pardon, he had no power to impose a fine. We do not concur, and are of opinion that the pardon was inoperative. His Honor should have proceeded to judgment, and had power to imprison as well as fine, one or both at his discretion, the pardon to the contrary notwithstanding.
 

 The pardon recites the conviction and sentence of imprisonment, and then proceeds to “pardon the offence of which they stand convicted, remitting so much of
 
 said judgment
 
 as extends to imprisonment, upon the express condition that they shall
 
 jirst
 
 pay the
 
 fines
 
 and costs incident to
 
 said judgment,”
 
 &c.
 

 This is not a pardon of the- offence, but of a portion of the punishment imposed by the judgment, for the general words first used are qualified, and the intention is declared to be only to remit the imprisonment, on condition that the fine and costs are paid.
 

 “ The king pardoneth a felony whereof A. stands attain» fed, and in truth he is not attainted ; this is
 
 expressio falsi,
 
 -and maketh the pardon void.” 3 Coke’s Institutes, 238.
 

 “If a man be attainted of felony by judgment, and after-wards the king pardoneth generally the felony, it is nought-worth, and the reason thereof is not because by the attain
 
 *4
 
 der the felony is extinct, but because the king is not truly informed (as he ought to be) of the true state of the case; for peradventure, if he had been informed of the truth, and; of all the proceedings, he would not have pardoned.” (j Rep. 13 a,
 

 “It seems to be laid down as a general rule in many books, that whenever it may be reasonably intended, that the king,, when he granted a pardon, was not fully apprised,, both of the heinousness of the crime,, and also h.ow far the-party stands convicted thereof upon record, the- pardon is void, as being gained by imposition upon the king. And this is very agreeable to the reason of the law, which seems to have entrusted the king with this high prerogative, upon a special confidence that he will spare those only whose case, could it have been foreseen, the law itself may be presumed willing to. have excepted out of its general rules, which the wit of man cannot possibly make so perfeqt as to, suit every particular case.”' Hawkins, b, 2, ch, 37, sec. 8,
 

 “ It is a general rule that, whenever it may rcasonably-be presumed the king is deceived, the pardon is void; there-, fore, any suppression- of truth, or suggestion of falsehood, in a charter of pardon, will vitiate the whole, for the king waa misinformed.” 4 Black. Com. 398..
 

 We think it, may reasonably be- intended; that the G-over-. nor was not fully informed of the proceedings in the case of' these defendants. We can look only at the record, of which a copy of the pardon is a part, and. can take notice of noth--ing
 
 aliunde..
 

 There are throe- grounds,, either of which is. sufficient to vitiate the pardon1st. The judgment is. referred to in the-pardon ag subsisting,, whereas, in. fact, it was annulled by an appeal to the- Supreme Court,, and. if that Court should decide there was error, and direct a
 
 venire de tyovo,
 
 the eonvic-. tion also, would be annulled,, and the defendants stand as if' there had; been, no. trial. If it. should, decide, there was op.
 
 *5
 
 error, the Judge presiding at the next term of the Superior Court would proceed to give judgment, and impose finos or imprisonment, or both, in Ms discretion. This would be a
 
 neiu judgment,
 
 and have no connection with the judgment that had been annulled by the appeal: this is settled. State v. Manuel, 4 Dev. and Bat. 38. Indeed, the Statute upon this subject sets forth the law as plainly as words can express it:
 
 “
 
 In -criminal cases, the decisions of the Supreme Court shall be certified to the Superior Court, from which the case was transmitted to the Supreme Court, which said Superior Court shall proceed to judgment and sentence, agreeably to the decision of the Supreme Court and the laws of the State.” Rev. Stat. chap. 33, sec. 6, As the Governor, at the time he executed the charter of pardon, acted upon the supposition that there was a judgment, it may reasonably be presumed that he was led into error by the suppression of the fact that the defendants had appealed.
 

 If it be said, that the defendants were ignorant of the effect of the appeal, the reply is — no man shall be heard to say that he is ignorant of -the law: this is settled. Courts are compelled to act upon this rule, as well in criminal as in civil matters. It lies at the foundation of the administration of justice. There is no telling to what extent, if admissible, the plea of ignorance would be carried, or the degree of embarrassment that would be introduced into every trial, by conflicting evidence upon the question of ignorance. State v. Boyett, 10 Ired. 336. Hoit v. Roper 6 Ired. Eq. 649.
 

 If it be suggested, that the fact of the appeal ivas immaterial, so far as the action of the Governor was concerned, and would not have influenced him in the premises, the reply is, without undertaking to say how far it would have had an influence on him, it is sufficient to say, it was well calculated to influence him to some extent. Every intendment is made against a party who is guilty of a suppression of a fact.
 

 
 *6
 
 Had the Governor been put in possession of the fact, that there was an appeal, and consequently that there was no judgment, it ■ is a reasonable presumption that he would either have taken the responsibility of granting an absolute pardon of the offence, as he had a clear right to do, either before or after judgment, or that he would have deferred his action until the Supreme Court disposed of the question, and .he should be certified of the sentence that the Judge presiding at the next term of the Superior Court had felt it to be his duty to pronounce. This latter course would have recommended itself by the consideration, that, if the Supreme Court directed a
 
 venire de
 
 novo, the defendant might be acquitted, or, if there was no error, the Judge, who imposed the sentence, might not imprison the defendants, and so the pardon would be unnecessary; or, at all events, if the second Judge should also think it to be his duty, under all the circumstances, to imprison the defendants, he would have the benefit of that additional fact, in aid of the exercise of his own discretion.
 

 And it is an unreasonable presumption, that he would, instead of pursuing one of the two courses above indicated, have attempted to do a thing
 
 in futuro
 
 by a present act, and to remit at that time, by his charter of pardon, a part o"f a judgment which was not then in
 
 esse,
 
 which might never have an existence, and the existence of which would depend upon certain contingent events, which he had no right to anticipate.
 

 The Governor may pardon an offence after it is committed, but it does not follow that he has power to do so before it is committed: other considerations are then involved;
 
 e. g.
 
 it would be in effect a license to commit crime. So the Governor may pardon a portion of the punishment after it is fixed by judgment, upon the ground that he has power to pardon the whole — the greater includes the less; but it does not follow that he has power to pardon a portion of the supposed
 
 *7
 
 punishment, when it is discretionary,
 
 before it is fixed by
 
 judgment, for other considerations are then involved ;
 
 e. g.
 
 it would interfere with the due administration of the law, and be in effect a rod held over the Judge, by giving him to know what the Governor thought his judgment ought to bo, or “ a solicitation to deal favorably by the defendants this the Queen of England cannot rightfully do, and yet she may rightfully pardon the offence entirely, and the charter of pardon is a bar to all further proceedings* The pardoning power, conferred by our constitution, is derived from the laws of England.
 

 We are not at liberty to decide at this time whether the Governor has such a power, because it has not been exercised or claimed in this case. It is sufficient for our purpose, to say, that the power is questionable, and, if so, fairness required that the fact of there being no judgment should have been disclosed when the pardon was applied for; and it is the extreme of unfairness to obtahi a pardon upon the supposition that there is a .judgment, and make use of it after-wards, when the judgment is about to be rendered. If it had no other effect, it was calculated to influence the discretion of the Judge, or to embarrass him, by letting him know what the Governor thought of the matter.' In the language of my Lord Coke, “ peradventure, if he had been informed of the truth and of all the proceedings, he would not hayo pardoned.”
 

 2nd. As appears by the transcript sent to this Court, the appeal Avas taken for the mere purpose of delay, no bill of exceptions being sent, and there b-úng no motion in arrest. If this fact had been made known to the Governor, it was well calculated to influence the exercise of his discretion. The appeal was in fact taken merely to get time to apply for the pardon : this was a perversion of the right of appeal, to a purpose entirely different from that for which it was conferred, and it cannot be supposed that the Governor would give countenance to an attempt to obtain an object by
 
 *8
 
 indirection: tbe inference is, that he believed the defendants were in jail, and the intent of the pardon was to remit the residue of the imprisonment. The pardon sets out that the judgment was subsisting; it follows that the Governor was not apprised of the appeal, and of course he did not know it was taken for delay.
 

 If it be said the defendants wished to avoid the disgrace of going to jail, and as the law had provided no mode, by which they could be allowed time to apply for the pardon, they were compelled to adopt the contrivance of taking an appeal, as a
 
 dernier
 
 resort, and are, therefore, excusable, the law permits the presiding Judge to postpone the time for carrying the sentence into execution, in order to give time to apply for a pardon, whenever, in his opinion, there q.re circumstances favorable to the defendants. 4 Black. Com. 392.
 

 But, it is suggested, this provision is of no avail in cases like the present, where the punishment is loft to the discretion of the Judge; for, if he thinks there are favorable circumstances, he will himself take them into consideration, and impose a punishment so mild, as to make a pardon unnecessary. . This is true; but the fact that the law has made no provision for allowing time to apply for a pardon in such cases, together with the consideration that they do not fall within the principle stated by IIawkiNS, in the passage cited above, as being the basis of the pardoning power, and the seeming inconsistencjr of allowing a discretion confided to the presiding Judge, who hears the whole case upon sworn testimony, to be reviewed by the discretion of the Governor, who acts upon
 
 ex parte
 
 statement, tends to show that it was contemplated that the power would be exercised sparingly, and only in extreme cases; for instance, if new matter should occur after the judgment.
 

 We do not mean to be understood as intimating an opinion, that the Executive has Hot a general power to pardon; but,
 
 *9
 
 when be is called upon to abate, not the rigor of a punishment fixed bylaw upon general rules, but the rigor of a high Judicial officer, on the ground that he has not sufficiently tempered his discretion with mercy, it is of the utmost importance that all of the facts should be fully disclosed.
 

 3rd. The pardon was “ on condition that the defendants should first pay the fines and all costs incident to said judgment;” it is apparent that the Governor was under the belief that a fine had been imposed upo,n each of the defendants. By accepting the pardon with this condition on its face, they are fixed with notice that the Governor was misinformed, and could not in fairness avail themselves of an error into which he had fallen. In reference to this, there is another view. Here was a condition precedent, which it was impossible for the defendants to perform, because there was no fine to be paid, and it is common learning, that, in such cases, the deed never takes effect, and is void. “ If the condition precedent be impossible, no estate or interest shall grow thereupon.” Co. Litt. b 3, ch. 5, sec. 334.
 

 The Governor, as appears upon the face of the pardon, supposed the defendants had each been fined, as well as imprisoned, and intended to remit the imprisonment, provided they in the first place paid the fines, and yet such use has been made of the pardon as to enable them to escape both fine and imprisonment. Every one will say this is not right! •and the fact that the law declares a pardon, obtained under such circumstances, to be void, is one among the many instances showing the truth of the maxim, “ the common law is the perfection of reason.”
 

 This opinion will be certified, to the end that the Superior Court may proceed to judgment and sentence, agreeably to this opinion and the laws of the State.