## EX PARTE COLLINS.

1. **Discharge of Convict:** COMMUTATION : PARDON : STATUTE. One whose death sentence was commuted to imprisonment for life by the Governor, while the act of 1865–6 (Laws, pp. 19–20 ; 2 W. S., p. 989, secs. 21, 22) was in force, is not entitled to his discharge by operation of law, and without a pardon, under Revised Statutes, section 6533 (amendatory of the act of 1865–6), but is only entitled to a recommendation for pardon, as provided by the act of 1865–6, where he has complied with its conditions.

2. **Pardon:** CONSTITUTION : CONVICTION. The constitution authorizes the Governor, in certain cases, to grant reprieves, commutations, and pardons, after conviction. (Const., art. 5, sec. 8). After conviction means after a return of a verdict of guilty.

3. ———· CONVICTION : COMMUTATION : SENTENCE. One convicted of murder in the first degree, whose sentence is commuted by the Governor to imprisonment for life, is in the penitentiary by virtue of the sentence of the court. The commutation does not annul the sentence of the court, but is, *pro tanto*, an affirmance of it, with a modification.

4.  **Discharge of Convict**: THREE-FOURTHS RULE: REVISED STATUTES, SECTION 6533. A convict sentenced to the penitentiary for life is not entitled to his discharge under Revised Statutes, section 6533, as said section only relates to those who have served three-fourths of the time for which they were sentenced. Such a period cannot be affirmed of one sentenced for life.

### *Habeas Corpus.*

WRIT DENIED.

*Smith, Silver & Brown* for petitioner.

*B. G. Boone*, Attorney General, *contra.*

SHERWOOD, J.—In the year 1872, the petitioner, Collins, was convicted of murder in the first degree, and sentenced to death, in the St. Louis circuit court. The Governor, B. Gratz Brown, commuted his punishment to imprisonment in the penitentiary for and during the term of his natural life. Thereupon, that court, by an order to that effect entered of record, sentenced Collins to imprisonment in the penitentiary as aforesaid.

At that time, the law of 1865–6 was as follows:

"Sec. 1. That when any person imprisoned in the penitentiary of the state of Missouri, shall have, during the whole time of his or her imprisonment, behaved according to the rules and regulations of that institution, to the full satisfaction of the inspectors, then the said inspectors, on the expiration of three-fourths of the time for which such person was sentenced, shall write and sign a testimony to that effect and present the same to the Governor of Missouri, with a recommendation that such person be pardoned."

"Sec. 2. That the same shall be done in regard to persons under the sentence of imprisonment for life, after having been imprisoned for fifteen years, and complied with the conditions named in the foregoing section." Laws 1865–6, pp. 19, 20.

In 1879, section 1 was amended at the revising session, and is now section 6533, Revised Statutes, 1879 :

"Sec. 6533. *Three-fourths rule.*—Any convict who is now, or may hereafter be confined in the penitentiary, and who shall serve three-fourths of the time for which he or she may have been sentenced in an orderly and peaceable manner, without having any infraction of the rules of the prison or laws of the same recorded against such convict, he or she shall be discharged in the same manner as if said convict had served the full time for which sentenced, and in such case no pardon from the Governor shall be required. (Laws 1865-6, p. 19, sec. 1, amended)."

It is conceded that the petitioner has been in the penitentiary for fifteen years, and in all respects has complied with the provisions of the law aforesaid, and it is conceded, also, that the inspectors and warden have certified these facts, and recommended the pardon of the petitioner to the Governor, as in section 1, aforesaid, is provided.

The question presented by this application, therefore, is, whether the prisoner is entitled to his discharge. The constitution of this state authorizes the Governor, *after conviction*, which means after return of a verdict of guilty ( *Commonwealth v. Lockwood*, 109 Mass. 323, and cas. cit.), to grant commutation for all offences, except, etc. Art. 5, sec. 8. A commutation is said to be : "The change of a punishment to which a person has been condemned into a less severe one." 1 Bouv. Law Dict. 306.

I do not regard the situation of the petitioner as at all affected, one way or the other, so far as the present question is concerned, whether he was originally sentenced to imprisonment for life or not, or whether his death sentence was commuted as heretofore stated. He is now in the penitentiary *by virtue of the sentence of the court;* and he would have been thus in the peni-

tentiary by virtue of such sentence, even if the court had made no subsequent order in the premises. It is easy to see that this must be so, by reflecting on what force it is that places a prisoner in the penitentiary. The Governor would clearly have no such power. His power of commutation, however, acting on the original sentence of the court, cuts down and modifies that sentence; and the force of that sentence, thus modified, sends the prisoner to the penitentiary. The commutation does not annul the sentence of the court, but is, *pro tanto*, an affirmance of it, with a modification.

This is easily proven: A man is convicted by the verdict of a jury, or upon his confession in open court, and his punishment assessed, either by the verdict, or by the court, at ten years in the penitentiary, and he is sentenced accordingly. That sentence is thereupon commuted by the Governor to the period of five years. Afterwards, a question of the competency of the convict to testify as a witness comes up. By what test would that competency be tried, but by the record of the lower court? By the terms of the second section of the act, on which the petitioner relies, one who was "under the sentence of imprisonment for life," was entitled to the benefits of that section by observing the conditions mentioned in the first. The words, "under the sentence of imprisonment for life," are broad enough, however, to cover and include any sentence, whether it be considered as resulting from the act of the court, or that of the executive. The words employed certainly make no distinction; and were they less plain than they are, the presumption in favor of liberty would authorize such a construction. The *status* of the petitioner then is, that he, so far as in him lay, has fully complied with the conditions annexed to his case, when he entered the walls of the penitentiary.

It may be conceded that he became entitled to what-

ever benefit an observance of those conditions gave him, but what benefit was that? Simply this: that he became entitled to be recommended to the Governor as a fit subject of pardon. This benefit he has received. His right to a *pardon* does not lie in the terms of the statute. Nor does the amendment of section 1 afore said, by the matter contained in section 6533, at all affect his case, since that relates only to those who have served *three-fourths* of the time for which they were sentenced. The expiration of such a period cannot be affirmed of one sentenced *for life*. Equitably, the prisoner is perhaps entitled to his discharge; but that is a subject which lies entirely in the discretion of the executive. By virtue of the writ which has been issued, we can only make inquiry into *his legal* rights in the premises.

The result is, that he must be remanded to the custody of the warden, and it is thus ordered. All concur.