PEOPLE ex rel. PATRICK v. FROST, Warden.

(Supreme Court, Appellate Division, Second Department. June 4, 1909.)

1. PARDON (§ 13*)—"COMMUTATION OF SENTENCE"—NATURE.
   The power of "commutation of sentence" is the power to change a greater punishment to a less punishment of which both are known to the law.
   [Ed. Note.—For other cases, see Pardon, Cent. Dig. § 27; Dec. Dig. § 13.*
   For other definitions, see Words and Phrases, vol. 2, pp. 1344, 1345; vol. 8, p. 7608.]

2. PARDON (§ 13*)—COMMUTATION OF SENTENCE—DEATH PENALTY.
   A commutation of a sentence of death for murder to life imprisonment is not invalid, in that the punishment of death cannot be commuted, because commutation is limited to the same kind and degree of punishment, where by law both the death sentence and life imprisonment may be imposed for murder, depending on its degree.
   [Ed. Note.—For other cases, see Pardon, Dec. Dig. § 13.*]

3. PARDON (§ 13*)—COMMUTATION OF SENTENCE—POWER OF GOVERNOR.
   Where by the Constitution the Governor may grant reprieves, commutations, and pardons after conviction for offenses except treason and cases of impeachment, he may commute a death sentence to life imprisonment, since the exceptions to his power prove the comprehensive nature of it.
   [Ed. Note.—For other cases, see Pardon, Dec. Dig. § 13.*]

4. PARDON (§ 13*)—COMMUTATION OF DEATH SENTENCE—LIFE IMPRISONMENT AS GREATER PUNISHMENT.
   It being the common judgment of mankind that the death sentence is a greater punishment than life imprisonment, it cannot be contended that the commutation of a death sentence to life imprisonment is void, as inflicting a greater punishment than the one commuted, though the convict prefer the death sentence.
   [Ed. Note.—For other cases, see Pardon, Dec. Dig. § 13.*]

5. PARDON (§ 8*)—NECESSITY OF ACCEPTANCE.
   A pardon is an act of grace, and it is regarded as a deed, which must be accepted by the convict to be valid.
   [Ed. Note.—For other cases, see Pardon, Cent. Dig. § 15; Dec. Dig. § 8.*]

6. PARDON (§ 13*)—COMMUTATION OF SENTENCE—NECESSITY OF ACCEPTANCE.
   Commutation of a sentence relates only to the punishment, and needs no acceptance by the convict to make it valid.
   [Ed. Note.—For other cases, see Pardon, Dec. Dig. § 13.*]

7. PARDON (§ 13*) — COMMUTATION OF SENTENCE — REMISSION OF PUNISHMENT COMMUTED.
   A contention that, it being beyond the power of the Governor to commute a death sentence to life imprisonment, an attempt at such commutation would not only remit the death sentence, but would also not be warrant for the detention of the defendant, cannot be supported.
   [Ed. Note.—For other cases, see Pardon, Dec. Dig. § 13.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**8. PARDON (§ 13\*)—COMMUTATION OF SENTENCE—EX POST FACTO ACT.**

Where power to remit a death sentence, imposed by law for murder, to life imprisonment, exists at the time of the commission of a murder, the exercise of that power by the Governor is not an ex post facto act, prescribing a different punishment than the one imposed by law.

[Ed. Note.—For other cases, see Pardon, Dec. Dig. § 13.\*]

**9. HABEAS CORPUS (§ 30\*)—NATURE OF WRIT.**

Habeas corpus to secure the release of a prisoner convicted of crime is not a writ of review, on which the legality of the justice of the judgment may be looked into, but the only inquiry is to ascertain whether the prisoner is detained by a final judgment of a competent tribunal of criminal jurisdiction, in accord with the provisions of Code Civ. Proc. § 2032, defining when a prisoner is forthwith to be remanded.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 25; Dec. Dig. § 30.\*]

**10. HABEAS CORPUS (§ 83\*)—RETURN—TRAVERSE—RULES OF PLEADING.**

Under Code Civ. Proc. § 2039, authorizing a prisoner bringing habeas corpus to traverse the return by alleging facts to show that his imprisonment or detention is unlawful, the traverse must be tested by the ordinary rules of pleading.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 75; Dec. Dig. § 83.\*]

**11. HABEAS CORPUS (§ 83\*)—RETURN—TRAVERSE—SUFFICIENCY.**

Under Code Civ. Proc. § 2039, providing that a prisoner bringing habeas corpus may deny any material allegation of the return, or make any allegation of fact showing either that his imprisonment or detention is unlawful and that he is entitled to his discharge, a traverse, charging that the court trying the prisoner was not impartial, but conspired with the prosecuting officers to arbitrarily convict him, and alleging no facts to show fraud or conspiracy, is bad.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 75; Dec. Dig. § 83.\*]

**12. COURTS (§ 237\*)—SUPREME COURT—JURISDICTION.**

The Supreme Court in all its divisions is but one court, and its Appellate Division has all the powers and general jurisdiction thereof, except where limited by law.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 683, 684; Dec. Dig. § 237.\*]

**13. HABEAS CORPUS (§ 48\*)—CONSTITUTIONAL LAW (§ 56\*)—JUDICIARY—LEGISLATIVE IMPAIRMENT—HABEAS CORPUS.**

A judge of an Appellate Division of the Supreme Court may issue habeas corpus, returnable before the court of which he is a member, though the district where the prisoner is detained is not in the district in which the court is held, and the Code of Civil Procedure, limiting the right of such judge to issue a writ under such circumstances, is invalid, since it was a right existing in the court at common law, which cannot be impaired by legislative enactment.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 46; Dec. Dig. § 48;\* Constitutional Law, Cent. Dig. §§ 63–65; Dec. Dig. § 56.\*]

Habeas corpus by the People, on the relation of Albert T. Patrick, against Jesse D. Frost, as Agent and Warden of Sing Sing State Prison. Writ dismissed, and prisoner remanded.

Argued before WOODWARD, JENKS, GAYNOR, BURR, and RICH, JJ.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Albert T. Patrick and William L. McDonald, for the writ.
William Travers Jerome, Dist. Atty., Robert C. Taylor, and Francis A. Winslow, opposed.

JENKS, J. This is a writ of habeas corpus to inquire into the cause of the imprisonment of the relator, Patrick. The return shows that Patrick was convicted of murder in the first degree, and judgment was pronounced against him whereby he was sentenced to be put to death; that the Governor commuted the sentence of death to imprisonment for life; and that Patrick is imprisoned under the judgment as so commuted. Both judgment and commutation are attacked. I shall consider first the commutation.

It is contended that a punishment of death cannot be commuted, because commutation is limited to the "same kind and degree of punishment," and that there cannot be any punishment of the same kind or degree as death. None of the cases cited by the relator justifies this limitation. It does not appear in the general or specific definitions of the word in Stormonth, the Century. Dictionary, Webster, or Worcester. Bouvier defines commutation as:

"The change of a punishment to which a person has been condemned into a less severe one."

Anderson's definition is:

"The substitution of a less for a greater penalty or punishment; the change of one punishment for another and different punishment, both being known to the law."

And I think we may define it as the power to change a greater punishment to a less punishment, of which both are known to the law. Lee v. Murphy, 22 Grat. (Va.) 789–798, 12 Am. Rep. 563; Rich v. Chamberlain, 107 Mich. 383, 65 N. W. 235; State v. Peters, 43 Ohio St. 651, 4 N. E. 81; Ex parte Janes, 1 Nev. 321; State v. State Board of Corrections, 16 Utah, 478, 52 Pac. 1090; Ogletree v. Dozier, 59 Ga. 802; Young v. Young, 61 Tex. 193. The Legislature, by its enactment that homicide may be punished by death or imprisonment according to the degrees thereof (Penal Code), recognized that the two punishments are so much of the same degree or kind that either may. be meted out for that crime.

I have no doubt that the Governor had the power of commutation in this case. Since 1846 he has been empowered by the Constitution "to grant reprieves, commutations and pardons after conviction, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations, as he may. think proper." The express exceptions prove "the comprehensive nature of the power." Perkins v. Stevens, 24 Pick. (Mass.) 278. Murder in the first degree is an offense (People ex rel. Kopp v. French, 102 N. Y. 587, 7 N. E. 913), and hence this general expression of the Constitution can include murder in the first degree, and that crime cannot be put within the exceptions without violation of the canon of construction that courts do not curtail the general rule, to which the exceptions are express, by extending the exceptions by implication. Sutherland on Statutory Constructions, § 328.

Moreover, this argument of implication rests alone upon a limitation of the word "commutation," which I have shown is not warranted. This contention of the relator would withhold from the executive a power frequently exercised since 1846, never questioned or doubted as far as I can find, and recognized by the highest court of the state. See People v. Broncado, 188 N. Y. 150, 80 N. E. 935. Denio, J., in his discussion in Hartung v. People, 22 N. Y. 105, says:

"If it is to be construed to vest in the Governor a discretion to determine whether the convict should be executed, or remain a perpetual prisoner at hard labor, this would only be equivalent to what he might do under the authority to commute a sentence. But he can, under the Constitution, only do this once for all. If he refuses the pardon, the convict is executed according to sentence. If he grants it, his jurisdiction of the case ends."

No reason occurs to me, none is suggested, why punishment for murder in the first degree cannot be commuted to imprisonment.

I find no force in the contention that there cannot be a commutation of the punishment of death to that of life imprisonment, because commutation implies a less punishment, but life imprisonment is a greater punishment than death. The degree of a punishment is not determined by the individual preference of a convict. Individuals commit suicide; but their choice of death before life does not alter the general fact that mankind clings to life as its great possession. Thus it is that mankind regards the sacrifice of life for another as the supreme altruism, that courts have freed it from rules of law (Eckert v. Long Island Railroad Co., 43 N. Y. 502, 3 Am. Rep. 721), and that Holy Writ declares it the greatest proof of love for a friend. It is the common judgment of man that to deprive the criminal of his life is the greatest punishment known to modern times. In People v. Silverman, 181 N. Y. 235, 240, 73 N. E. 980, 982, Cullen, C. J., says:

"While the defendant's previous malady and infirmities of temper were insufficient to affect his legal responsibility, they may warrant a mitigation of his punishment, and his relief from suffering the supreme penalty of the law."

Kent wrote in his Commentaries:

"The punishment of death is, doubtless, the most dreadful and the most impressive spectacle of public justice; and it is not possible to adopt any other punishment equally powerful by its example. It ought to be confined to the few cases of the most atrocious character; for it is only in such cases that public opinion will warrant the measure, or the peace and safety of society require it." 14th Ed., vol. 2, star page 13.

Blackstone wrote:

"But the reason upon which this sentence is grounded seems to be that this is the highest penalty that man can inflict, and tends most to the security of mankind, by removing one murderer from the earth, and setting a dreadful example to deter others, so that even this grand instance proceeds upon other principles than those of retaliation." Cooley's Ed. vol. 2, book 4, star page 14.

Shaw, C. J., said in Commonwealth v. Wyman, 12 Cush. (Mass.) 239:

"A law which changes the punishment from death to imprisonment for life is a law mitigating the punishment, and therefore not ex post facto. Commonwealth v. Mott, 21 Pick. (Mass.) 492; Calder v. Bull, 3 Dall. 386, 1 L. Ed. 648; 1 Kent, Com. (7th Ed.) 450; Story, Const. § 1339."

o

The struggle of many reformers of the criminal law was to reduce the number of crimes with the penalty of death, and of many theorists to abolish that punishment. The people of this state have in effect determined that this penalty is the most severe by prescribing it as the punishment for the highest crimes only—murder in the first degree and treason—and by prescribing that in the former case only the appeal is direct to our highest court. There can be no question that, as regards the offender, our scheme of punishments regards that punishment which leaves life is less than that which ends it.

The relator argued that he had never accepted the commutation; but he concedes in his printed points that commutation does not require his acceptance. Such I think is the law. Lee v. Murphy, supra. In this a commutation differs from a pardon, either absolute or conditional. A pardon in an act of grace to the exemption of punishment, and it is regarded as a deed, which must be accepted by the convict to be valid. United States v. Wilson, 7 Pet. 150, 8 L. Ed. 640. It does not proceed upon the theory of innocence, but implies guilt. Roberts v. State, 160 N. Y. 217, 54 N. E. 678. "It gives to him [the convict] a new credit and capacity, and rehabilitates him to that extent in his former position." Knote v. United States, 95 U. S. 149, 153, 24 L. Ed. 442. But a commutation relates only to the punishment. It is said in Ex parte Collins, 94 Mo. 25, 6 S. W. 346:

"The commutation does not annul the sentence of the court, but is, pro tanto, an affirmance of it, with a modification."

See, too, Re Discharge, 73 Vt. 414, 51 Atl. 10, 56 L. R. A. Vt. 662.

I cannot follow the relator to his conclusion that, perforce of the executive action in his case, he must be discharged. That conclusion must rest upon the proposition that there was not a valid commutation. His argument seems to be that the Governor could not commute in this case because death has no kind or degree, that perforce of the attempt of commutation "the law" authorizing the punishment of death has been "pro tanto repealed" in this case, and that the relator cannot be detained under the Governor's warrant, because the Governor has no authority "to ex post facto" prescribe a punishment of a different kind. I have discussed the point that the Governor could not commute the punishment of death. I cannot see the force of the contention that the act "repealed" the original punishment. The proposition in effect is that the Governor's act, ineffective to change the punishment, remitted that punishment. It is a mistake to regard the executive's act as a pardon, to which the condition attached was invalid. Even if the act of commutation is regarded as in the nature of a pardon, it was not absolute, and the condition, imprisonment for life, was valid. Ex parte William Wells, 18 How. 307, 15 L. Ed. 421. If the condition was not accepted, the pardon was inoperative. Id. But this act of commutation was not attempted as incidental to the constitutional power to pardon, but in exercise of the express and distinct constitutional power to commute. The act of commutation, as I have shown, but affects the punishment to change it, while the proposition in effect is that the Governor's act, ineffective to change the punishment, nevertheless remitted it. It is hard to see why an ex-

ercise of that power that cannot change the punishment in effect remits it or abolishes it.

There is no merit in the contention that the punishment of life imprisonment was ex post facto. If the power to commute existed at all at the time of the commission of the crime, then the punishment for murder in the first degree as prescribed by law was not only death as prescribed by statute, but such punishment as might be meted out by the power of commutation as expressed in the Constitution. The punishment as thus changed is "as much a punishment prescribed by law as the punishment ordained by statute." Re Victor, 31 Ohio St. 208. In Commonwealth v. Wyman, supra, Shaw, C. J., said:

"An ex post facto law is one which declares an act previously done criminal and punishable, and which was not so when the act was done, or which declares a much higher punishment than existed at that time. But an act plainly mitigating the punishment of an offense is not ex post facto; on the contrary, it is an act of clemency. A law which changes the punishment from death to imprisonment for life is a law mitigating the punishment, and therefore not ex post facto. Commonwealth v. Mott, 21 Pick. (Mass.) 492; Calder v. Bull, 3 Dall. 386, 1 L. Ed. 648; 1 Kent, Com. (7th Ed.) 450; Story, Const. § 1339."

And if this power of commutation extends over murder in the first degree since 1846, then he who went to do homicide that might be adjudged murder in the first degree was not assured by law that his sole punishment would be death, but that such punishment might be commuted. And the sum of it all is that the punishment of the relator was death, and, if the act of the Governor could not and did not work a commutation thereof, then the punishment remains unexecuted.

I consider second the attack upon the conviction. Habeas corpus is not a writ of review, so that we may look into "the legality or the justice" of the judgment in People v. Patrick, 182 N. Y. 131, 74 N. E. 843. One can but inquire into the jurisdiction of the courts that pronounced judgment, to ascertain whether the prisoner is detained by a final judgment of a "competent tribunal of criminal jurisdiction," in accord with the provisions of section 2032 of the Code of Civil Procedure. People ex rel. Tweed v. Liscomb, 60 N. Y. 559, 19 Am. Rep. 211; People ex rel. Young v. Stout, 81 Hun, 336, 30 N. Y. Supp. 898, affirmed 144 N. Y. 679, 39 N. E. 858. It is not contended that such a court as tried the prisoner had not jurisdiction of the crime or of the person, or that the court was incompetent by reason of any statutory disability of the judge who presided thereat, or of improper constitution of the jury. The sole point is that the judge was not the impartial officer contemplated by the term "due process of law." Stripped of epithets, the charge in brief is that the court was hand in hand with the prosecuting officers as a conspirator for conviction. The charge of the traverse is that the judge acting in his official capacity thus conspired for an arbitrary collusive conviction, so that the court was a pretended court that worked or procured a pretended judgment and thereafter the denial of a motion for a new trial.

The demurrer to the traverse as insufficient should be sustained. The Code of Civil Procedure provides that the prisoner may on oath deny any material allegations of the return, or make any allegations of fact showing either that his imprisonment or detention is unlawful

and that he is entitled to his discharge, and thereupon the judge or court must proceed in a summary way to hear the evidence in support or against the imprisonment or detention. Section 2039. The traverse, so far as "any allegations of fact" are concerned, is to be tested by the general requirements of pleading. Matter of Depue, 185 N. Y. 68, 77 N. E. 798, citing Spelling on Extraordinary Remedies. Thus considered, the traverse is bad, in that it is bald of any allegations of fact. Mere general allegations of fraud or conspiracy are wholly insufficient. Knowles v. City of New York, 176 N. Y. 437, 68 N. E. 860, and authorities cited. In Pratt v. Gardner, 2 Cush. (Mass.) 63, 48 Am. Dec. 652, the declaration alleged that a justice of the peace willfully and maliciously received a false and groundless complaint against the plaintiff for a crime, and thereupon willfully and maliciously issued his warrant, and thereupon willfully and maliciously tried and convicted the plaintiff, without opportunity for witness or counsel, and upon conviction willfully and maliciously sentenced the plaintiff. The court, per Shaw, C. J., said:

"The same strong and repeated qualifying epithets might be added in every case; but as they do not constitute distinct averments to be traversed and put in issue, they cannot alter the legal character of the facts averred."

I may add these considerations: Whatever was done by the judge as a judge or as a court was a matter of record, transmitted to the Court of Appeals for review (section 485, Code Cr. Proc.). The guilt of Patrick was determined by a jury. If the malice or corruption or conspiring of the judge had been revealed in any act or word which was prejudicial to the rights of the prisoner during his trial or in any matter incidental thereafter, he had the right of review by a court of power to order a new trial if it is "satisfied that the verdict was against the weight of evidence, * * * or that justice requires a new trial, even if no exception was taken in the court below." People v. Corey, 157 N. Y. 351, 51 N. E. 1024; section 528, Code Cr. Proc. The acts complained of in the judge or court, whatever the motive behind them, were still judicial acts. Bradley v. Fisher, 80 U. S. 335, 20 L. Ed. 646; Lange v. Benedict, 73 N. Y. 12, 29 Am. Rep. 80; Pratt v. Gardner, supra. It is but just to say that there is nothing whatever disclosed before us that in the slightest degree reflects upon the learned judge who presided at the trial, or upon the counsel for the people in this case. So far as the challenge is addressed to the composition of the Court of Appeals, it may be said that such court of last resort has passed directly upon the question. People v. Patrick, 183 N. Y. 52, 537, 75 N. E. 963, 76 N. E. 1102. See Daniels v. Towers, 79 Ga. 785, 7 S. E. 120. The challenge arraigns, for far-fetched and fanciful reasons, the presence in that court of a most upright judge.

Although the benign provisions of this great writ are not to be withheld from any man upon any considerations of judicial comity, they are not to be perverted so that a prisoner in his turn by mere accusations may try the court that convicted him. The action of a dissatisfied convict, thus presenting the courts of his conviction as incompetent at the bar of another court upon general accusations of

fraud, conspiracy, and wrongdoing, but mocks at the orderly and dignified administration of justice. In Yates v. Lansing, 5 Johns. 292, the Chief Justice said:

"And I fully acquiesce in the opinion of Lord Chief Justice Wilmot that trials by jury will be buried in the same grave with the authority of the courts who are to preside over them."

I can point the moral by application to this very case. The brief of the relator in the Supreme Court of the United States, on motion for writ of habeas corpus, handed up upon this argument, arraigns all of the judges of the Court of Appeals who voted to affirm the judgment of conviction as "parties to the general conspiracy," and they are said to have affirmed that judgment "arbitrarily and corruptly." Much may be excused in the relator, or in any other in like situation. We heard him with patience, and we earnestly followed his plea. We did not look for the calm and dispassionate utterance that marks mere advocacy. But the people have rights as well as a prisoner, and there is no day in court for him who would accuse without facts and assail by imputation, baseless save that the judgment went against him.

A point in the case, but not raised by the parties, may be noticed. The application for the writ was made in vacation to Mr. Justice Gaynor, who made it returnable before this court, of which he is a member. With reference to the Supreme Court, the Code of Civil Procedure provides that the application for the writ must be made to either "a justice of the Supreme Court, in any part of the state," or "the Supreme Court, at a Special Term, or the Appellate Division thereof, where the prisoner is detained within the judicial district within which the term is held." This term of this court is not held within the judicial district where the prisoner is detained. But the writ of habeas corpus at common law is beyond legislative limitation or impairment, and it is declared that every court and officer having power to grant the writ and to pass upon the legality of an imprisonment "has and may exercise, in the forms prescribed by law, all the power exercised at common law by the Court of King's Bench in England, and the Supreme Court of this state, as the corresponding tribunal with us." People ex rel. Tweed v. Liscomb, supra, 60 N. Y. 567, 19 Am. Rep. 211.

In Ex parte Clarke, 100 U. S. 399, 25 L. Ed. 715, it is said that it was the practice of the English judges in cases of consequence or difficulty to postpone the case for the whole court, and that under the habeas corpus act it was the regular course to take bail and to require the party to appear in the King's Bench or Assizes, though the judge would discharge absolutely if the case were one of illegal imprisonment, citing authorities. See, too, Blackstone's Com. book 3, p. 132. Church on Habeas Corpus says (page 70):

"At one period it was thought that the writ of habeas corpus ad subjiciendum—which was only for matters of crime—could issue out of the King's Bench only in term time; but Watson's Case settled it that the King's Bench, or a judge thereof, might grant the writ, at common law, in vacation, and that it might be made returnable immediately either before the court or before a judge at chambers."

In McLeod's Case, 1 Hill, 377, 37 Am. Dec. 328, Cowen, J., made the writ returnable before the court. The Supreme Court in all of its divisions is but one court, and its Appellate Division has all the powers and general jurisdiction thereof, except when limited by law. Syracuse Sav. Bk. v. S., C. & N. Y. R. R. Co., 88 N. Y. 115; Matter of Pye, 21 App. Div. 266, 47 N. Y. Supp. 689; People ex rel. Mayor v. Nichols, 79 N. Y. 590. The limitation upon its jurisdiction in habeas corpus is beyond the legislative control.

The demurrer to the traverse is sustained, the writ is dismissed, and the prisoner is remanded. All concur.