Ex parte PEROVICH.

(District Court, D. Kansas, First Division. November 7, 1925.)

No. 2848.

1. **Pardon ⊜⊃8—To be effective, pardon must be accepted by prisoner.**

Pardon, to be effective, must be accepted by prisoner.

2. **Pardon ⊜⊃13—Purported "commutation" of death sentence to one of life imprisonment held void, as change in nature of punishment.**

Order of President, purporting to commute death sentence imposed on one convicted of murder to life imprisonment, *held* an illegal change in nature of punishment, and void; "commutation" being a reduction in the degree of punishment.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Commute—Commutation.]

Habeas corpus proceeding by Vuco Perovich against the Warden of the United States Penitentiary, Leavenworth, Kan. Writ granted.

Alton H. Skinner, Asst. U. S. Atty., of Topeka, Kan., for the United States.

Geo. T. McDermott, of Topeka, Kan., for petitioner.

POLLOCK, District Judge. The petitioner, Vuco Perovich, a prisoner in the United States penitentiary at Leavenworth, Kan., files this petition for a writ of habeas corpus, claiming to be unlawfully restrained of his liberty. The response of the warden of the United States penitentiary admits the restraint, and as ground therefor shows that the petitioner was on August 3, 1905, found guilty of murder in the first degree in the District Court of the United States for the District of Alaska, and thereafter by that court sentenced to death. By reason of appeal and other steps taken in the case, the date of execution was postponed from time to time, and finally, on June 5, 1909, the President of the United States executed an instrument fixing the punishment of the petitioner at life imprisonment, instead of execution, and thereupon, by order of the Department of Justice, the petitioner was brought to the United States penitentiary at Leavenworth, Kan., where he has since been and is now confined.

The merits of this case depend upon the validity of the instrument executed by the President, directing that Perovich be imprisoned for life, instead of being executed. The government contends that this instrument is a commutation of sentence. This the petitioner denies, contending that, instead of decreasing the extent of the punishment, it entirely changes the nature of the punishment and is therefore void, as beyond the power of the President.

This question seems never to have been decided by the courts of the United States, and there seems but little precedent in the decisions of the state courts. In People ex rel. Patrick v. Frost, 133 App. Div. 179, 117 N. Y. S. 524, the court held that a change of sentence from death to that of life imprisonment was a commutation, on the ground that mankind generally clings to life as its greatest possession. This decision is by an inferior court of the state of New York, and was based on the construction of the statute of that state, which provided for either death or life imprisonment as a penalty for murder. Likewise, Massachusetts has held, in Commonwealth v. Wyman, 12 Cush. 237, that a law which changed a punishment from death to life imprisonment mitigated the punishment, and therefore was not ex post facto.

The question here involved must not be confused with conditional pardon. In the early history of this country there was considerable question as to whether the President had the power to issue a conditional pardon; that question being finally decided in the affirmative by a divided court in Ex parte Wells, 18 How. 307, 15 L. Ed. 421.

[1, 2] In the instant case the question of

pardon is not involved, because a pardon, to become effective, must be accepted by the prisoner, and Perovich has never accepted the change of sentence ordered by the President. The question, therefore, still remains: Was the action of the President a commutation of the prisoner's sentence, or was it an entire change in the nature and character of the punishment? If the former, it was within the President's power, and valid; but, if the latter, it was not within his power, and void.

A commutation is a reduction in the degree of punishment. No one would question that a change of sentence from life imprisonment to 20 years would be a reduction in a sentence, and hence a commutation, for the punishment in both cases would be identical in kind, the only difference being in the length of the sentence; but who would say that a sentence of imprisonment for one year is a less punishment than that of exile for two years? The two punishments are so different in kind that they cannot be compared. Again, is life imprisonment preferable to death? To some, it might be; to others, it might not be. The two punishments differ in their very nature and character. To an innocent man, imprisonment for life might well be a life of torture, a living hell, compared to which death might be a kindness.

The facts surrounding the murder of which the petitioner was found guilty were more or less circumstantial, and the petitioner has at all times insisted that he was absolutely innocent. He now stands before this court, protesting his innocence, although realizing that, if his contention that the order of the President was void is upheld by this court, the result will be that he will then be facing the original sentence of death. Knowing this, and protesting his innocence, he prefers the sentence of the court (death) to the substituted punishment which the President ordered. This court is convinced that what President Taft actually did was to entirely change the nature and grade of the petitioner's punishment.

The statutes of the United States provide that one convicted of murder in the first degree shall suffer death; the only exception being when the jury shall fix a sentence of life imprisonment. In the absence of such action on the part of the jury, the law provides but for one punishment—death. The Constitution and laws of the United States do not authorize the President to invade the province of the jury in determining the nature of the sentence to be inflicted. Had the jury fixed the sentence at life imprisonment,

the President would have had the power to commute that imprisonment from life to a lesser period of time. He would not have had the power to change the sentence from life imprisonment to death, and likewise did not have the power to change the sentence from death to life imprisonment. He cannot change the nature of the punishment simply because to his mind it might appear preferable. To do so would be to impose a conditional pardon, without the consent or acceptance of the accused, which he cannot lawfully do. As said by the Supreme Court in Burdick v. United States, 236 U. S. 79, 35 S. Ct. 267, 59 L. Ed. 476:

"Circumstances may be made to bring innocence under the penalties of the law. If so brought, escape by confession of guilt implied in the acceptance of a pardon may be rejected, preferring to be the victim of the law rather than its acknowledged transgressor, preferring death even to such certain infamy. This, at least theoretically, is a right and a right is often best tested in its extreme. 'It may be supposed,' the court said in United States v. Wilson, * * * 'that no being condemned to death would reject a pardon; but the rule must be the same in capital cases and in misdemeanors. A pardon may be conditional, and the condition may be more objectionable than the punishment inflicted by the judgment.' The case would seem to need no further comment, and we have quoted from it, not only for its authority, but for its argument. It demonstrates by both the necessity of the acceptance of a pardon to its legal efficacy, and the court did not hesitate in decision, as we have seen, whatever the alternative of acceptance—whether it be death or lesser penalty. The contrast shows the right of the individual against the exercise of executive power, not solicited by him nor accepted by him.

"The principles declared in Wilson v. United States have endured for years; no case has reversed or modified them. In Ex parte William Wells, 18 How. 307, 310 [15 L. Ed. 421], this court said: 'It was with the fullest knowledge of the law upon the subject of pardons, and the philosophy of government in its bearing upon the Constitution, when this court instructed Chief Justice Marshall' to declare the doctrine of that case. And in Commonwealth v. Lockwood it was said by Mr. Justice Gray, speaking for the Supreme Judicial Court of Massachusetts, he then being a member of that court, 'it is within the election of a defendant whether he will avail himself of a pardon from the

executive (be the pardon absolute or conditional).' 109 Mass. 323, 339 [12 Am. Rep. 699]. The whole discussion of the learned justice will repay a reference. He cites and reviews the cases with the same accurate and masterful consideration that distinguished all of his judicial work, and the proposition declared was one of the conclusions deduced."

It follows that the order of the President in changing the nature of the petitioner's punishment from death to life imprisonment was without authority of law, and void, and said order, therefore, does not authorize the warden of the United States penitentiary to restrain the petitioner of his liberty. It follows that the writ should issue as prayed for by the petitioner.

It is so ordered.