In the Matter of the Application of JOHN WHITE for Permission to File a Claim against the STATE OF NEW YORK.

Court of Claims, February 28, 1938.

*Frederick L. Kane* [*Stephen D. Finale* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Harold Greenstein, Assistant Attorney-General,* of counsel], for the State of New York.

GREENBERG, J. The claimant alleges, among other things, that on May 20, 1934, he was convicted of a felony and sentenced to imprisonment in a State prison for a term of five years; that, while imprisoned, he sustained personal injuries as the result of the alleged negligence of the State; and that on August 20, 1937, his sentence was commuted by the Governor.

The Attorney-General, in opposing the application, states in his brief that the Governor annexed to the commutation the conditions that the claimant should place himself under the supervision of the Parole Board until April, 1939, *i. e.,* the date fixed for the expiration of the original term of sentence, and be subject to arrest for the violation of any conditions of the commutation. The accuracy of these statements of the Attorney-General are not questioned by the claimant.

The State challenges the right of the claimant to sue it at this time. Its sole claim is that, despite the Governor's commutation, the claimant is barred by section 510 of the Penal Law from bringing any action against it until April, 1939, when the sentence originally imposed upon the claimant will have expired.

Section 510 of the Penal Law provides as follows: " Forfeiture of office and suspension of civil rights. A sentence of imprisonment in a State prison for any term less than for life, forfeits all the public offices, and suspends, during the term of the sentence,. all the civil rights, and all private trusts, authority, or powers of, or held by, the person sentenced."

No claim is made that the Legislature has passed any special act enabling the claimant to sue the State on his alleged claim. The State, however, has, by general statute, waived its sovereign immunity from liability for the tortious acts of its officers and employees. (Court of Claims Act, § 12-a.) The right to sue thus vouchsafed by the State plainly is a civil right within the meaning of section 510 of the Penal Law. (*Green* v. *State,* 251 App. Div. 108.) The State's statutory waiver of its immunity does not, *pro tanto,* toll the suspension of civil rights imposed by section 510 of the Penal Law. (*Green* v. *State, supra.*) Unless the Governor's commutation has served to restore the claimant's civil rights, he is, at this time, without legal capacity not only to sue the State, but even to initiate this application.

The continued suspension of the claimant's civil rights is a matter of grave importance. True, he is not physically confined in a prison. Nevertheless, his freedom, from many points of view, may prove illusory if the State's contention is sound. Factually, the claimant may take advantage of his freedom to enter into agreements to perform lawful services or for other proper purposes. He may perform such agreements. But receipt of the promised consideration therefor, although economically indispensable to the claimant's very existence, may, under the State's theory, be withheld by the promisor interposing the defense of the suspension of civil rights. Rehabilitation of a criminal offender, which is the humane objective of commutation, might, under such circumstances, readily be frustrated. No trustee could be appointed to enforce the claimant's rights, as he is not, in the language of the statute, " actually imprisoned." (Correction Law, §§ 350, 354. Cf. *Cole* v. *American Railway Express Co.*, 228 Mo. App. 78; 68 S. W. [2d] 736.) The consequences of a suspension of civil rights are, therefore, so serious as to invite careful scrutiny of the contention of the State.

The sentence of imprisonment imposed upon the claimant was the judgment rendered by the court in a criminal case against him. (*Manke* v. *People*, 74 N. Y. 415.) The suspension of his civil rights was a consequent of that sentence. (Penal Law, § 510.) By the mandate of the statute (Penal Law, § 510) that suspension may continue only " during the term of the sentence." The lapse, or expiration, of the term of sentence necessarily ends the suspension of civil rights under the statute. (Cf. *Green* v. *State, supra.*)

A commutation granted by the Governor changes the punishment to which a person has been condemned by substituting one that is less severe. (*People ex rel. Patrick* v. *Frost*, 133 App. Div. 179.) In legal contemplation, the commutation constitutes a remission by the State, through its executive, of the duty owing by a prisoner to serve the full sentence imposed by the State, through its judiciary.

When the Governor, in the exercise of his constitutional power (State Const. art. 4, § 5), unconditionally commutes, or remits, a part of the sentence in behalf of the State, such part ceases to exist. Thereafter only the unremitted portion of the original sentence may be enforced; and such unremitted part of the sentence, as the result of the Governor's commutation, becomes the sentence to be executed. In other words, the commutation is " an affirmance of it [the sentence], with a modification." (*Ex Parte Collins*, 94 Mo. 22; 6 S. W. 345, quoted with approval in *People ex rel. Patrick* v. *Frost, supra.*) When the unremitted part of the sentence is served,

the sentence originally imposed by the court, as modified by the Governor, is executed and satisfied. (*Chapman* v. *Scott*, 10 F. [2d] 156.) Concurrently with its execution the term of sentence ceases. While the commutation cannot obliterate the prisoner's crime or conviction (*Williams* v. *Brents*, 171 Ark. 367; 284 S. W. 56), it can, and does, curtail the term of imprisonment. With the termination of the sentence of imprisonment, the continued suspension of civil rights, which is dependent thereon, is dissolved. (Penal Law, § 510.)

So much for the effect of an unconditional commutation. It is undisputed, however, that the Governor, in granting commutation to the claimant, attached the conditions already indicated. There is no doubt that it is the executive's prerogative to annex to a commutation any conditions that he deems proper (State Const. art. 4, § 5), " provided only such conditions are not illegal, immoral or impossible of performance." (*People ex rel. Brackett* v. *Kaiser*, 209 App. Div. 722.) The conditions annexed to the commutation herein clearly are neither contrary to public policy nor to law. (*People ex rel. Brackett* v. *Kaiser, supra*.) It becomes necessary, therefore, to determine their effect upon the commutation.

A commutation " is an act of grace." (*People ex rel. Atkins* v. *Jennings*, 248 N. Y. 46, 51.) Like any other gift, it may be made upon conditions precedent or upon conditions subsequent. In construing the nature of the conditions, the rules of construction of the common law applicable to other forms of grants or gifts should be followed. (Cf. *State* v. *McIntire*, 46 N. C. 1.)

If the conditions imposed by the Governor are to be regarded as conditions precedent to commutation, the conclusion would seem inescapable that the suspension of civil rights, imposed by section 510 of the Penal Law, with all of its grave consequences to the claimant, still continues. In the absence of clear language pointing that the conditions are to be treated as precedent, I am of the opinion that they should be construed as conditions subsequent. (*Osborn* v. *United States*, 91 U. S. 474; *State* v. *McIntire, supra*.) This view accords with the sound common-law rule favoring the immediate vesting of estates and other rights. It leads to the dual conclusions that the Governor's commutation became operative on August 20, 1937, and that on that day the claimant's term of sentence ended. The Attorney-General, in his brief, reaches, in part, a similar conclusion, by stating that, by the Governor's commutation, the claimant's sentence " was reduced so as to expire August 20, 1937."

These views, while having the effect of restoring presently the civil rights of the claimant, do not, of course, detract from the con-

tinued binding effect of the conditions imposed, for the claimant takes the commutation *cum onere*. A breach of these conditions will divest the claimant of his rights under the commutation, and leave the State free to reimprison him as provided by law. (*People ex rel. Mark* v. *Lawes*, 131 Misc. 426.)

It is, however, claimed by the State that, as the result of the conditions imposed, the claimant's status is that of a prisoner out on parole.

There is a recognized distinction between a prisoner released by a commutation of sentence and a prisoner released upon parole. Parole does not suspend, or curtail, the sentence originally imposed by the court. (Correction Law, § 241.) A commutation actually modifies it. (*People ex rel. Patrick* v. *Frost, supra; People ex rel. Mark* v. *Lawes, supra.*) A prisoner paroled by the Parole Board remains in legal custody. Although allowed to go outside of the prison walls, the paroled prisoner still remains, in legal theory, in prison and serving his sentence. (*People ex rel. Newton* v. *Twombly*, 228 N. Y. 33.) A prisoner released on a commutation of sentence, unlike a prisoner on parole, does not continue to serve his sentence. (*People ex rel. Mark* v. *Lawes, supra.*) In the last-mentioned case, TAYLOR, J., in considering the status of a prisoner released on a conditional commutation not unlike the one here involved, said (at p. 428): " I determine that there is no force to his suggestion, * * * that while he was at liberty, * * * he was ' imprisoned ' and during the period ' serving ' his sentence. Neither the law nor the conditions of his release by the Governor contemplated any such absurdity."

*Green* v. *State (supra)* does not support the State's theory, as that action was brought by the claimant while he was, in fact, an inmate of a prison serving his sentence. Section 510 of the Penal Law was, therefore, a bar to his action. It is not an objection to the instant application.

The objection to the legal capacity of the claimant to prosecute this motion, or the action referred to therein, is untenable, and the motion is granted.

Settle order on notice.

GIBBS, J., concurs.