## Court of Appeals.

*October*, 1885.

## PEOPLE *ex rel.* FREY *v.* WARDEN.

### HABEAS CORPUS.

Upon return to a habeas corpus, the court having jurisdiction of the writ has power to determine whether the judgment or process under which the petitioner is held, emanated from a court of competent jurisdiction, and whether the court had power to give the judgment or issue the process.

Courts-martial and delinquency courts are courts of limited jurisdiction, having jurisdiction only of offenses against military discipline committed by persons belonging to the particular branch of the military organization for which such courts are organized.

In the absence of a valid enlistment of the person proceeded against, such court has no authority over the offense or the person.

The recital of jurisdictional facts in the record of courts of limited and inferior jurisdiction does not prevent their judgments being impeached by extrinsic evidence showing want of jurisdiction, whenever they are sought to be used by way of defense or justification to persons seeking to enforce them.

APPEAL by the relator, Morris Frey, from an order of the General Term of the Supreme Court in the Third Department, of January 19, 1885, affirming an order of the Special Term of July 3, 1884, dismissing a writ of *habeas corpus*, and remanding the relator to the custody of the warden of the county jail of New York county.

The facts appear in the opinion.

*Isaac L. Sink,* for the relator, appellant.

*Horatio C. King,* for respondent.

RUGER, Ch. J.—The return of the defendant to the writ of *habeas corpus* in this case alleged, in substance, that the relator, Morris Frey, was detained in custody by virtue of a warrant issued to enforce the collection of a fine duly imposed by a delinquency court for the non-performance by him of certain military duties enjoined by his superior officers. That said Frey was a duly enlisted member of Company B, in the Eleventh Regiment, of the National Guard of the state of New York, and though a minor at the time of such enlistment the same was legal and proper by reason of the consent of his father thereto, and he thereby became legally subject to the performance of military duty. The relator traversed this return by alleging the invalidity of his enlistment on account of his minority, and for want of the consent of his father thereto, and denied the jurisdiction of the delinquency court in the premises. The traverse of the relator was supported by the affidavit of his father to the effect that he had never consented to the enlistment of his son, and also by his own affidavit that the alleged consent was one signed by himself at the suggestion and in the presence of the enlisting officer, without the knowledge or consent of his father. It was nowhere alleged that the relator had ever performed any military duty, or in any way acknowledged any obligation imposed upon him by the alleged enlistment; and it was proved by the affidavit of the father that, immediately upon information coming to him, inferentially by the discovery of his son's uniform, that his son

had enlisted, he returned the uniform and repudiated the enlistment. Upon the hearing, the trial judge declined to hear any evidence relating to the legality of the relator's enlistment, upon the ground that the determination of the court-martial upon that question was conclusive upon the relator in this proceeding, and remanded the relator to the custody of the defendant. Upon appeal to the general term, this order was affirmed upon the ground that the trial court, under the provisions of the Code relating to proceedings upon *habeas corpus*, had no authority to review the determination of the court-martial as to the validity of the relator's enlistment, and the relator appeals therefrom to this court.

We think the courts below have erred in their disposition of this proceeding, and that their orders should be reversed. We have failed to find anything in the return to show that the question as to the legality of the relator's enlistment was raised or determined in the delinquency court. It is true that it is recited in the warrant, issued by the president of the regimental court-martial, that it satisfactorily appeared to said court that said Frey was a member of Company B, in the Eleventh Regiment, and while it is possible that such a warrant might be a protection to an innocent officer attempting to execute the process, it does not furnish evidence, in favor of the court issuing it, of the facts therein recited, when its jurisdiction is directly assailed. The Code of Civil Procedure, which is substantially a re-enactment of the Revised Statutes, so far as it is material to this case, provides, with reference to the proceeding in question, as follows: Section 2039. "A prisoner produced, upon a writ of *habeas corpus*, may, under oath, deny any material allegation of the return, or make any allegation of fact showing either that his imprisonment or detention is unlawful, or that he is entitled to his discharge. Thereupon the court or judge must proceed in a summary way to hear the evidence produced in support of, or against the imprisonment or detention, and to dispose of the prisoner as the justice of the case requires." Section 2032. "The court or judge must forthwith make a final order to remand the prisoner, if it appears that he is detained in custody for either of the following causes, and that the time for which he may legally be so detained has not

expired." Sub. 2. "By virtue of the final judgment or decree of a competent tribunal of civil or criminal jurisdiction . . . . . or by virtue of an execution or other process issued upon such a judgment, decree or final order." Section 2033. "If it appears upon the return that the prisoner is in custody by virtue of a mandate in a civil cause he can be discharged only in one of the following cases:" Sub. 1. "When the jurisdiction of the court which, or the officer who, issued the mandate has been exceeded, either as to matter, place, sum or person." Section 2034. "But a court or judge, upon the return of a writ issued as prescribed in this article, shall not inquire into the legality or justice of any mandate, judgment, decree or final order specified in the last section but one, except as therein stated."

It would seem from these provisions that the competency of the tribunal to render the judgment or decree under which a person is held in custody, and their jurisdiction over him, either as to matter, place, sum or person, is by the strongest implication made the subject of inquiry upon a hearing before a judge or court issuing a writ of *habeas corpus*, and the court is thereby expressly required, upon the return of such a writ, to institute an inquiry into the cause of detention and discharge the prisoner when there is a lack of jurisdiction on the part of the tribunal making an order for his detention. It was held by this court, in the case of People *ex rel.* Tweed *v.* Liscomb, 60 *N. Y.* 559, that the provision in the Revised Statutes forbidding an inquiry into the "legality and justice of any process, judgment, decree or execution upon a hearing under *habeas corpus*" proceedings does not take from the court or officer having jurisdiction of the writ the power, or relieve from the duty of determining whether the judgment or process emanated from a court of competent jurisdiction, and whether the court had power to give the judgment or issue the process. "It is an elementary principle, recognized in all the cases, that to give binding effect to a judgment of any court, whether of general or limited jurisdiction, it is essential that the court should have jurisdiction of the person as well as the subject-matter, and that the want of jurisdiction over either may always be set up against a judgment when sought to be enforced or

any benefit is claimed under it." Ferguson *v.* Crawford, 70 *N. Y.* 257. Questions as to the force and effect to be ascribed to the judgments of judicial tribunals depend much upon the form in which they arise—whether directly or collaterally, the subject to which they relate—whether of person or subject-matter, and the character of the tribunal—whether of general or limited jurisdiction.

The questions arising in this case are governed by the rule favoring the widest latitude of examination, as the judgment assailed was rendered by a court of limited jurisdiction; and its authority, not only over the person of the relator but also of the subject-matter, is assailed. Courts-martial and delinquency courts are tribunals of special and limited powers, having jurisdiction only of offenses against military discipline committed by persons belonging to the particular branch of the military organizations for which such courts are organized. Sections 101 to 104 and 123, chap. 299, Laws of 1883; Smith *v.* Shaw, 12 *Johns.* 257; Wilson *v.* MacKenzie, 7 *Hill*, 95; Mills *v.* Martin, 19 *Johns.* 7. It expressly provided by section 40 of chapter 299, Laws of 1883, that no person under the age of twenty-one years shall be enlisted without the consent of his parent or guardian, and this requirement is thereby made the condition of a valid enlistment. The existence of such an enlistment thus constitutes a part of the subject-matter of the jurisdiction of the delinquency court, and in its absence the court has no authority whatever over the offense or the person proceeded against. It is, therefore, a fundamental requisite to the jurisdiction of such courts that the persons over whom they attempt to exercise authority shall have been duly enlisted and be legally subject to the obligations of military duty. Judgments pronounced by them, when questioned in any collateral proceeding, are of no force or effect as establishing a right to enforce them, unless accompanied by proof of the jurisdictional facts upon which the authority of the court to render them depends. Such proof, whenever furnished, is always subject to the right of the person affected thereby to controvert it, and establish, if he is able to do so, the want of jurisdiction of the court whose authority is disputed. Unlike courts of general jurisdiction, the recital of jurisdictional facts in their records does not fur-

nish *prima facie* evidence even of their existence, but they must be affirmatively proved in order to establish the validity of the judgments rendered.

It has been sometimes claimed, and is, indeed, supported by the authority of cases in some of the sister states and in England, that the recital of jurisdictional facts in the judgments of courts of general jurisdiction furnishes conclusive evidence of their existence, and precludes any inquiry into their existence when collaterally brought in question; but the weight of authority in this state seems to be against the proposition and to the effect that such recitals are *prima facie* evidence only of the facts recited. Ferguson *v.* Crawford, *supra ;* Bloom *v.* Burdick, 1 *Hill,* 130 ; People *v.* Cassels, 5 *Id.* 164.

With reference to courts of limited and inferior jurisdiction, however, whether the record recites the jurisdictional facts or not, it has uniformly been held that their judgments are open to impeachment by extrinsic evidence showing want of jurisdiction, whenever they are sought to be used by way of defense or as a justification to persons seeking to enforce them. Adams *v.* S. & W. R. R. Co., 10 *N. Y.* 328 ; Smith *v.* Shaw, 12 *Johns.* 257 ; Mills *v.* Martin, 19 *Id.* 7 ; People *v.* Cassels, 5 *Hill,* 164 ; *Greenl. Ev.* 470.

When, however, a court has jurisdiction of the subject-matter, and has acquired jurisdiction of the person by the service of proper process, or the voluntary appearance of the party, it is competent for it to try and determine all questions within the issue arising during the course of the trial, and its decisions thereon can be reviewed only on appeal in a direct proceeding having that object in view.

For the reasons stated, we think the orders of the general and special terms should be reversed, and the record remitted for the purpose of a rehearing upon the issue made by the traverse, with costs of all the courts to abide the result.

All concur.

NOTE.—See Matter of Hardigan (Supr. Ct. Vermont), 1 *East. Rep.* 250.