THE PEOPLE OF THE STATE OF NEW YORK ex rel. D. A. SKINNELL v. THOMAS B. RAND and Others, ' Composing a General Court–Martial, etc.

*Courts-martial — when their decision cannot be reviewed on* certiorari *— what acts justify the conviction of an officer of conduct unbecoming an officer and a gentleman.*

The relator, a second lieutenant of a regiment of the national guard, was, after having been duly summoned before and heard by a general court-martial, upon charges and specifications accusing him of conduct unbecoming an officer and a gentleman and prejudicial to the service, convicted of that offense and sentenced to be censured and to pay a fine of fifty dollars. The evidence established the fact that on the 24th day of October, 1883, the accused, while wearing his uniform, as second lieutenant, induced a marker at the national rifle range at Creedmoor, Long Island, by paying him the sum of fifty cents, to give to the relator a record of a score for rifle practice, to which he was not entitled.

*Held,* that as the court had jurisdiction of the subject-matter and of the person of the accused, its decision could not be reviewed by a writ of *certiorari* if there was any evidence in support of the charges.

That the facts alleged, if proved, justified the conviction and punishment of the relator for a violation of the provisions of section 205 of the Military Code, and section 135 of the General Regulations for the Government of the Military Forces of the State.

Hun—Vol. XLI    67

Hearing upon the return to a writ of *certiorari* issued to review the proceedings, finding and sentence of a general court-martial of the National Guard of the State of New York, whereby the relator, the second lieutenant of company B of the ninth regiment of the national guard, was found guilty of conduct unbecoming an officer and a gentleman, and sentenced to be censured and to pay a fine of fifty dollars.

*Thomas F. Byrne*, for the relator.

*Henry L. Sprague*, for the respondents.

Macomber, J.:

The relator, in April, 1885, was duly summoned before a general court-martial and served with copy of the charges and specifications, accusing him, in different forms, of conduct unbecoming an officer and a gentleman, and prejudicial to the service. At the hearing before the court-martial, the relator interposed a demurrer, which was overruled, and thereupon the plea of not guilty was interposed.

The evidence established the fact that on the 24th day of October, 1883, the accused, while wearing his uniform as second lieutenant, induced one Blucher E. Hinrichs, a marker to the national rifle range at Creedmoor, Long Island, by paying him the sum of fifty cents, to give to the relator a record of a score for rifle practice to which he was not entitled. The witness Hinrichs testified that on the day named the accused gave him fifty cents, and stated that he wanted to qualify, and then commenced to shoot, but not making good shots, stated that he wanted a score of twenty-six, and this witness immediately reported the fact, together with the money, to Mr. Vose, an officer of the rifle association. Another witness was called by the name of Stephen F. Glover, also a scorer, who testified that on the same day, at another rifle range at Creedmoor, the accused came to him without a rifle and handed the witness a score card, and, in answer to the scorer's question whether he was going to shoot, stated that he was not; that he could not shoot, and gave the scorer fifty cents and said he wanted a score; that thereupon the witness gave him a score, which was also reported, together with the money, to the same officer of the rifle association.

The evidence in behalf of the accused did not vary the fact, recited by the other witness, of the payment of the money to the scorer, but it had a tendency to establish the fact that, as was claimed by the accused, the money was paid for the purpose of securing fair and just consideration by the scorers to the men of the same regiment with the accused.

The court-martial, however, acting upon what appears to us to be a preponderance of the evidence, found the accused guilty of paying to each of the scorers fifty cents, and of asking and receiving scores at the two ranges to which·he was not entitled. The court had jurisdiction of the subject-matter and of the person of the accused, and consequently if there was any evidence in support of the charges and specifications its conclusion could not be reviewed by a writ of *certiorari.* (*The People ex rel. Spahn* v. *Townsend*, 10 Abb. N. C., 169; *The People ex rel. Frey* v. *The Warden, etc.*, 100 N. Y., 20.)

By the two hundred and fifth section of the Military Code of the State every commissioned officer, in time of peace, may be punished for disobedience of orders, neglect or ignorance of duty or unofficer like conduct, or disrespect to a superior officer, or for neglect to comply with any of the requirements of that act, and may be sentenced to be cashiered, incapacitated from holding any military commission, fined in a sum not exceeding $100 or reprimanded, or may be sentenced to all or either of such fines and penalties in the discretion of the court. The provisions of the Military Code are supplemented by general regulations for the government of the military forces of the State, which, by the statute as well as by the obligation taken by each officer when he enters the national guard, are equally binding with the provisions of the Military Code itself.

Section 135 of the General Regulations of the Military Forces is as follows : " Military courts will also exercise jurisdiction upon the proper charges of an unofficer-like conduct or disrespect to a superior officer when the offense is committed by an officer while wearing his uniform, or any part of it, though he may not be on duty." The finding of the court-martial is that the accused, at the time of the commission of the alleged offense, was in the uniform of his regiment and was competing for the marksman's badge; other than that there is no evidence that the accused was in the per-

formance of any specific duty. It may be conceded that the accused was not, at the time of the acts complained of, in the performance of any duty which he owed to the State or to his superior officers. It appears that he was a member of the National Rifle Range Association, and was consequently subject to its rules and regulations. His practice with the rifle, even if a pastime, was in the direction of the service in which he had volunteered. It was a portion of his military training. He seems to have been visiting the grounds of the rifle association with many of the men of his regiment, and while technically not on military duty he saw fit to wear the uniform which had been provided him while ostensibly engaged in a public competition for a medal. Being thus in his uniform and desirous of acquiring a name for marksmanship, to which he was not entitled by merit, he unlawfully and corruptly, and in a public place, induced the scorers to give him a score card of a much higher rank than he could have obtained honestly. The offense may be likened somewhat to acts which have been from time immemorial condemned by the courts and classed as misdemeanors at common law, such as using false weights and measures, playing with loaded dice and marked cards and other like cheats. Becoming publicly intoxicated while wearing military uniform is a familiar instance of an offense against gentlemanly and officer-like conduct required in time of peace. Buying or obtaining corruptly a record as a marksman while so attired, and when attended by many comrades in a public place, must be deemed equally a military offense, as it brings scandal and disgrace upon the national guard.

The judgment, findings and sentence of the court-martial should be affirmed and the writ of *certiorari* dismissed, with costs.

BRADY, P. J., and DANIELS, J., concurred.

Judgment affirmed and writ dismissed, with costs.