The People of the State of New York ex rel. Charles Young
v. James C. Stout, Agent and Warden of State Prison at
Auburn, N. Y.

*Treaties, the supreme law — indictment — judgment of conviction of an offense not
extraditable, when void — jurisdiction of courts to convict of such an offense —
writ of habeas corpus — purpose thereof.*

A treaty made between the United States and a foreign country is the supreme
law of the land, of which a court is required to take judicial notice.

Under an indictment charging only the higher degree of a crime a person may be
convicted of a lesser degree of the offense.

A person extradited from a foreign country cannot lawfully, by a judgment of a
court, be punished for an offense, committed prior to his extradition, not
extraditable by the treaty existing between the United States and such foreign
country, until his failure, after an opportunity to do so, to return to the country
by which he has been surrendered.

If a person indicted for the crime of assault in the first degree and also for the
crime of assault in the second degree, upon his trial is found guilty of assault
in the second degree, he is thereby acquitted of the charge of assault in the
first degree.

The limitation of jurisdiction to try in the United States a person delivered up
in a foreign country is dependent upon his having been surrendered pursuant
to a treaty. If he is otherwise taken into custody and brought into the juris-
diction of the United States court, no extradition treaty is violated by his trial
for any offense, and the same rule is applicable to the trial of a person volun-
tarily surrendered by the government of a foreign country without reference
to an existing treaty between such country and the United States.

Where a person has been extradited from the kingdom of Great Britain under an
indictment charging him with assault in the first degree, pursuant to a treaty
between that government and the United States, if upon his trial he is found
guilty of the crime of assault in the second degree, he is entitled to demand
his liberty and a reasonable time within which to return to the kingdom of
Great Britain if the crime of assault in the second degree is not an extraditable
offense under the provisions of such treaty.

Habeas corpus is a common-law writ; its privilege is preserved by the organic
law of the State of New York and its legitimate purpose cannot be denied by
statute. It is not available to inquire thereby into the mere legality or justice
of a judgment or mandate, if the term "legality" or "justice" is not used
so as to include questions of jurisdiction or power; but the want of jurisdic-
tion of a tribunal to pronounce a judgment or mandate, by which a prisoner is
placed and detained in custody, furnishes to him the right to resort to such
writ for relief, and that is the subject of inquiry thereunder.

If a party is held in custody only by virtue of a judgment pronounced when
there was no jurisdiction to pronounce the same, either on account of want of

jurisdiction or by reason of its being in excess of jurisdiction, the judgment is void and he is not put to an appeal therefrom, but may be released by habeas corpus.

Rᴇᴛᴜʀɴ to a writ of habeas corpus issued out of the General Term of the Supreme Court held in and for the fifth judicial department and bearing date the 26th day of September, 1894.

*H. J. & W. H. Sullivan,* for the relator.

*Howard H. Widener* and *E. C. Aiken,* for the defendant.

Bʀᴀᴅʟᴇʏ, J.:

By indictment found by the grand jury of Monroe county in June, 1893, containing three counts, the relator was charged (1) with the crime of assault in the first degree made with a loaded revolver, with intent to kill Herbert Guering; (2) with assault in the second degree upon the same person with a loaded revolver and the infliction of grievous bodily harm; (3) with assault in the second degree with an instrument likely to produce grievous bodily harm upon the same person.

The relator was tried upon the indictment in April, 1894, in the Court of Sessions of that county, and by the verdict of the jury found guilty of assault in the second degree. The judgment of the court thereon was that he be imprisoned in the State prison at Auburn for the term of four years and five months, and he was committed accordingly.

After the rendition of the verdict and before sentence the relator moved in arrest of judgment that the court had no lawful right or jurisdiction to render it for the reason that having been extradited from England on the specific charge of assault with intent to commit murder and having been acquitted of such charge he was entitled to and demanded his liberty that he might have a reasonable time to return to England, in accordance with the provisions of the treaty existing between Great Britain and the United States. The motion was overruled and the judgment before mentioned followed.

The facts upon which the relator seeks to be relieved from the judgment and imprisonment are that shortly after the commission of the act constituting the alleged offense he left this country and went to England, from where he was extradited and brought back to the

county of Monroe pursuant to the provisions of a treaty between the two governments, whereby it was agreed that the United States and Her Britannic Majesty should upon mutual requisitions respectively made, " deliver up to justice all persons who being charged with the crime of murder or assault with intent to commit murder * * * shall seek an asylum or shall be found within the territories of the other." It also provides for the manner and means of accomplishing its purpose. (Treaty of 1842, art. 10.)

By a further treaty supplementary to that article it was provided that " No person surrendered by or to either of the high contracting parties, shall be triable or be tried for any crime or offense committed prior to his extradition other than the offense for which he was surrendered until he shall have had an opportunity of returning to the country from which he was surrendered." (Treaty of 1889, art. 3.)

And further provision was made by the Federal statute for accomplishing the purposes of extradition treaties with foreign countries. (U. S. R. S. tit. 66, §§ 5270–5279.)

In the requisition and warrant of the executive of the United States upon which action was taken in England pursuant to the treaty, with a view to the surrender of the relator, the offense with which he was charged was specifically stated as that of " assault with intent to commit murder," and the warrant there issued for the surrender of him to the agent commissioned to receive and bring him to the United States in like manner described the alleged offense upon which the extradition proceedings were had.

The question upon the merits is whether the Court of Sessions of Monroe county exceeded its jurisdiction of the person of the relator in the rendition and execution of the judgment which consigned him to imprisonment. He was not extraditable under the treaty upon the charge of the offense of assault in the second degree. The alleged crime upon which the extradition proceedings were taken and had was assault in the first degree as defined by our statute. (Penal Code, § 217.)

The relator was, therefore, properly put upon trial and tried under the indictment. But he was convicted only of a lesser offense than that for which he had been extradited, and a lesser offense than that for which he was extraditable, by virtue of the treaty between the United States and Great Britain. How then, in view of its pro-

visions, could he lawfully be subjected to the judgment pronounced upon the verdict? The treaty is the supreme law of the land, and of it the court was required to take judicial notice. (U. S. Const. art. 6, § 1, subd. 2.)

It must be assumed that the relator could not lawfully, by the judgment of the court, be punished for an offense not extraditable by the treaty until his failure, after opportunity to do so, to return to the country in which he had been surrendered. (*U. S.* v. *Rauscher,* 119 U. S. 407.)

He was not convicted of that offense. But it is urged, on the part of the defendant, that as the court had jurisdiction to try him upon the indictment as for assault in the first degree, it was within the power of the court to punish the relator for any lesser degree of the crime of assault for which he should by the jury be convicted on such trial. It is true that upon an indictment charging only the higher degree of the crime a person may be convicted of any lesser degree of it. (Penal Code, §§ 10, 35; Code Crim. Proc. §§ 390, 444.) This is upon the theory that the lesser is included in the higher degree of the offense. (Id. § 445.) But, nevertheless, the minor is not the major offense. And unless the conviction of an assault, less in degree than that with intent to commit murder, was within the contemplation of the extradition treaty, it is not seen that the relation of it to such extraditable charge can bring the lower degree within the purpose or effect of the surrender made pursuant to the treaty. The purpose of the international compact evidently was to confine its execution to those charged with the graver crimes, and it is entitled to no construction which will justify the trial, conviction or punishment of a person surrendered pursuant to it of any degree of assault other than that there mentioned. If anything further in that respect had been intended it may be assumed that such purpose would have been in some manner expressed in the treaty.

The effect of the verdict of conviction for assault in the second degree was acquittal of Young on the charge of assault in the first degree. (*People* v. *McDonald,* 49 Hun, 67; *People* v. *Willson,* 109 N. Y. 347.)

Before the supplemental treaty of 1889 was made, that of 1842 was in many cases so construed as not to permit the trial of a per-

son delivered up in execution of the treaty for any offense other than that for which he was extradited while his custody, taken by such surrender, continued. (*Commonwealth* v. *Hawes*, 13 Bush, 697; 26 Am. Rep. 242; *State* v. *Vanderpool*, 39 Ohio St. 273; 48 Am. Rep. 431; *Ex parte Hibbs*, 26 Fed. Rep. 421, 431.) And such is the import of the Federal statute on the subject. (U. S. R. S. §§ 5272, 5275.)

In *U. S.* v. *Rauscher* (119 U. S. 407, 432), decided in 1886, where the court distinctly so held, it was said : " We do not think the circumstance that the same evidence might be sufficient to convict for the minor offense, which was produced before the committing magistrate to support the graver charge, justifies this departure from the principles of the treaty." This construction of the treaty, as well as such effect of it, was by expression *obiter* recognized with approval in *People ex rel. Post* v. *Cross* (135 N. Y. 540).

The view expressed by Chief Judge CHURCH in *Adriance* v. *Lagrave* (59 N. Y. 110, 115), that there was no treaty provision denying the right to try for any other than the extraditable offense, is not applicable to the situation afterwards produced by the supplemental provision of the convention of 1889.

The limitation of the jurisdiction to try here a person delivered up in a foreign country is dependent upon his surrender pursuant to a treaty having such effect. If he is otherwise taken into custody and brought into the jurisdiction of our courts, no extradition treaty is violated by the trial of him for any offense. (*Ker* v. *Illinois*, 119 U. S. 436.) And the same rule would be applicable to the trial of a person voluntarily surrendered by the government of a foreign country without reference to the treaty on that subject between that and this country.

It is here urged by the defendant's counsel that the surrender of the relator should be treated as having been so made as not to confine the right of trial to the extraditable offense of the treaty. The reason asserted for such contention is that the indictment was present at the hearing had preliminarily to the surrender, and it should be assumed that he was delivered up for trial on the charge of assault in any of the degrees alleged in the indictment. Nothing appears to justify such inference or conclusion. The proceedings in England, as they appear by the documentary evidence, were had pursu-

ant to the treaty, and this appears by the warrant there issued wherein the alleged offense upon which he was surrendered is distinctly stated to be that of assault with intent to commit murder.

The further question is raised whether relief can be had by habeas corpus, and it is insisted that the only remedy available to the relator is in review of the judgment by appeal, and that at all events that remedy should first be exhausted.

The statute provides that the court before which a person is brought by virtue of the writ of habeas corpus must examine into the facts alleged in the return, and into the cause of the imprisonment, and must make a final order to discharge him therefor if no lawful cause for the imprisonment is shown. (Code Civ. Proc. § 2031.) But if it appears that he is detained "by virtue of the final judgment or decree of a competent tribunal of civil or criminal jurisdiction," he must be remanded. (Id. § 2032.)

Habeas corpus is a common-law writ, and the privilege of it is preserved by the organic law of the State (Const. art. 1, § 4); and, therefore, its legitimate purpose cannot be denied by statute. It is not available to inquire into the mere legality or justice of a judgment or mandate. For that purpose the remedy of the prisoner is by review. (*People ex rel. Danziger* v. *House of Mercy*, 128 N. Y. 180; *People ex rel. Gunn* v. *Webster*, 75 Hun, 278; *Ex parte Fonda*, 117 U. S. 516; *In re Wood*, 140 id. 278.) But the term "legality" or "justice," in the sense so used, is not deemed to include questions of jurisdiction or power. And the want of jurisdiction of the tribunal to pronounce the judgment or mandate by which the prisoner is placed and detained in custody furnishes to him the right to resort to the writ for relief, and that is the subject of inquiry. (*People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559; *People ex rel. Frey* v. *The Warden, etc.*, 100 id. 20; *People ex rel. Danziger* v. *House of Mercy, supra.*)

In the present case the jurisdiction of the Court of Sessions, as respects the person and subject-matter, to try the relator upon the charge of assault with intent to kill, cannot be questioned. This was the offense alleged in the first count of the indictment. He was, therefore, properly put upon trial in that court. But by virtue of the supreme law of the land the custody of the relator was so qualified as not to exist other than for the purposes of his trial upon that

specific charge.   For any other purpose his person was beyond the legitimate control of the court — excluded from it by force of the international treaty before mentioned.   If that charge had been stricken from the bill the lawful custody and jurisdiction would have ceased, and he would have been enabled to return to the country from which he had been extradited.   The like effect followed his acquittal of that offense, which was the result given by the verdict for an assault in a minor degree only.   In that view it would seem that the question is no different than it would have been if the indictment upon which he was tried had not contained the count for assault in the first degree.   Then he could not have been tried without violation of the treaty pursuant to which he was extradited, and (as held in *U. S.* v. *Rauscher*) he was clothed with the right of exemption from trial for any other than the one offense until he had the opportunity to return to the country from which he was taken.   It follows that there was no jurisdiction to pronounce the judgment for execution against the relator.   And, as said by Judge Allen in the *Tweed Case* (60 N. Y. 591): " A party held only by virtue of judgments thus pronounced, and, therefore, void for want of jurisdiction, or by reason of the excess of jurisdiction, is not put to his writ of error (appeal), but may be released by habeas corpus."

These views lead to the conclusion that the relator is entitled to his discharge from imprisonment.

Dwight, P. J., Lewis and Haight, JJ., concurred.

Ordered that the relator, Charles Young, be and he hereby is discharged from imprisoment.   But let the execution of this order be suspended for five days after the service of a copy of this order upon the district attorney of Monroe county.