THE PEOPLE OF THE STATE OF NEW YORK ex rel. P. ALBERT STILWELL, Appellant, v. JOHN J. HANLEY, as Warden of the City Prison, Borough of Manhattan, in the City of New York, Respondent.

Crimes — extradition — habeas corpus — hypothecation by broker of customer's securities — decision of English authorities that crime is extraditable conclusive upon courts of this country in absence of fraud — habeas corpus to obtain release of convict on ground that count of indictment on which he was convicted did not constitute crime in England from where he had been extradited, properly dismissed — hypothecation of securities apparently larceny in England.

1. Under the terms of treaties between the United States and Great Britain, permitting the return of fugitives from justice, the duty of determining whether a charge made against one sought to be extradited from England, at the request of the authorities in this country, was one which would justify commitment for trial in England so as to come within the provisions of the treaties, is laid upon the English magistrates and executive authorities to whom the extradition papers are presented and their decision cannot be questioned.

2. Where the President of the United States issued his warrant to bring back for trial a fugitive from justice, indicted in New York city for larceny in the first degree, embezzlement and for violating section 956 of the Penal Law entitled " Hypothecation of customers' securities," and annexed to the warrant were all the extradition papers including exemplified copies of the sections of the New York Penal Law under which the indictment was found, properly certified depositions of the witness, showing that these provisions of law had been violated by the defendant, also a copy of the indictment and the warrant of arrest issued thereon, and all of the documents were presented to an English magistrate, who examined them, read the depositions and directed that the fugitive be turned over to the United States agents, upon which the British authorities issued a warrant for his return to this country, it must be presumed that the magistrate did his duty and found that the facts alleged in the third count of the indictment would also violate the law of England if committed there, and his determination, in the absence of fraud, is conclusive upon the courts of this country.

3. A writ of habeas corpus, therefore, by which one so extradited seeks his release from prison after conviction on the third count of the indictment only, on the ground that there is no evidence to show that the wrongful hypothecation of stock certificates by a broker is a crime in England as well as in New York and that, therefore, the trial court had no jurisdiction to try him for that offense, is properly dismissed. (*United States* v. *Rauscher,* 119 U. S. 407; *People ex rel. Young* v. *Stout,* 81 Hun, 336; 144 N. Y. 699, distinguished.)

4. In any event hypothecation of securities under the circumstances of the third count would apparently be larceny in England. Thus the offense is a crime in both countries.

*People ex rel. Stilwell* v. *Hanley,* 213 App. Div. 811, affirmed.

(Argued June 2, 1925; decided July 15, 1925.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered March 13, 1925, which affirmed an order of Special Term dismissing a writ of habeas corpus and remanding the relator to custody.

*Almuth C. Vandiver* for appellant. The Court of General Sessions was without jurisdiction to sentence appellant. (*Forbes* v. *Nelson,* 27 U. S. 253; *U. S.* v. *Rauscher,* 119 U. S. 418; U. S. Const. art. 6, § 1, subd. 2; *People ex rel. Young* v. *Hannan,* 9 Misc. Rep. 600; *People ex rel. Young* v. *Stout,* 81 Hun, 336; 144 N. Y. 699; *People ex rel. Post* v. *Cross,* 135 N. Y. 540; *People* v. *Atwater,* 229 N. Y. 303; *Wright* v. *Henkel,* 190 U. S. 55; *L. G. W. Steam Co.* v. *Phenix Ins. Co.,* 129 U. S. 397; *People* v. *Arnstein,* 211 N. Y. 588; *Rex* v. *Nesbitt,* 28 Ont. L. R. 91.)

*Joab H. Banton, District Attorney* (*William B. Moore* of counsel), for respondent. Upon the question of jurisdiction, the conviction of the relator, Stilwell, in the Court of General Sessions, of a violation of section 956 of the Penal Law was proper and his commitment thereunder was legal. (*Cohn* v. *Jones,* 100 Fed. Rep. 639; *Greene* v. *United States,* 154 Fed. Rep. 401; 2 Russell on Crimes

[8th ed.], 1187; *Wright* v. *Henkel,* 190 U. S. 40; *Powell* v. *United States,* 206 Fed. Rep. 400.)

CRANE, J.　In December of 1924 the defendant was convicted in the Court of General Sessions, New York city, of violating section 956 of the Penal Law entitled "Hypothecation of customers' securities." He has sought his release from prison by this habeas corpus proceeding wherein he alleges that the Court of General Sessions had no jurisdiction to try him for this offense. He raises this objection under the treaties existing between Great Britain and the United States regarding the extradition of criminal offenders.

Stilwell, Leffler & Lowe was a copartnership doing a stock brokerage business in New York city until its bankruptcy in July, 1922. The defendant was senior member of the firm. Before its failure the firm had wrongfully sold and disposed of shares of stock in the Oklahoma Producing and Refining Corporation of America belonging to a customer named Lyendecker.

. For this offense the defendant was indicted for larceny in the first degree, embezzlement, also known as first degree larceny, and for violating section 956 of the Penal Law. The indictment contained three counts. The jury acquitted the defendant of the larceny counts and found him guilty of hypothecating his customers' securities without authority.

After the firm's failure, Stilwell went to London, England, where he remained until he was extradited and brought back to New York for trial on this indictment. On the trial and by this proceeding he insists that he was not extradited for violating section 956 of the Penal Law, that it is not one of the extraditable offenses specified in the treaties between the two countries and that, therefore, the Court of General Sessions had no jurisdiction to try him for such a crime.

What are the provisions of the treaties permitting the

return of fugitives from justice? The Ashburton Treaty contracted in 1842 reads:

" Article X.

" It is agreed that the United States and Her Britannic Majesty shall, upon mutual requisitions by them or their ministers, officers or authorities, respectively made, deliver up to justice all persons who, being charged with the crime of murder, or assault with intent to commit murder, or piracy, or arson, or robbery, or forgery, or the utterance of forged paper, committed within the jurisdiction of either, shall seek an asylum or shall be found within the territories of the other: Provided, that this shall only be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had there been committed; and the respective judges and other magistrates of the two Governments shall have power, jurisdiction, and authority, upon complaint made under oath, to issue a warrant for the apprehension of the fugitive or person so charged, that he may . be brought before such judges or other magistrates, respectively, to the end that the evidence of criminality may be heard and considered; and if, on such hearing, the evidence be deemed sufficient to sustain the charge, it shall be the duty of the examining judge or magistrate to certify the same to the proper executive authority, that a warrant may issue for the surrender of such fugitive. The expense of such apprehension and delivery shall be borne and defrayed by the party who makes the requisition and receives the fugitive."

This was supplemented in 1889 by including additional offenses and modified procedure as follows:

"Article I.

" The provisions of the said Tenth Article are hereby made applicable to the following additional crimes:

1925.]          Opinion, per CRANE, J.          [240 N. Y. 455]

\*   \*   \*   (3) Embezzlement, larceny, receiving any money, valuable security, or any other property, knowing the same to have been embezzled, stolen or fraudulently obtained.   (4) Fraud by a bailee, banker, agent, factor, trustee or director or member or officer of any company, made criminal by the laws of both countries.   \*   \*   \*

"ARTICLE III.

" No person surrendered by or to either of the High Contracting Parties shall be triable or be tried for any crime or offense, committed prior to his extradition, other than the offense for which he was surrendered, until he shall have had an opportunity of returning to the country from which he was surrendered."

In accordance with these treaty terms the President of the United States on the 13th day of November, 1923, issued his warrant to certain named officers of the New York police force authorizing them to receive Stilwell from Great Britain and bring him back for trial.   Annexed to the warrant were all the extradition papers including exemplified copies of the sections of the New York Penal Law under which the indictment was found; properly certified depositions of the witness, showing that these provisions of law had been violated by the defendant; also a copy of the indictment and the warrant of arrest issued thereon.   The formal request of the district attorney to the Governor of the State and the application of the Governor to the Secretary of State of the United States for the requisition of Stilwell were also a part of the requisition papers.

All of the documents were presented to the magistrate in the Bow Street Magistrate's Court, London.   He examined them, read the depositions, and directed the detective from Scotland Yard " who had the defendant " to turn him over to the United States agents.   The British authorities issued a warrant for Stilwell's return which was given to the detective from Scotland Yard.   These

are the facts as they appear in the record on this appeal.

When these papers were handed to the magistrate in London, what was his duty? According to the treaty he was to have the prisoner brought before him, examine the evidence of criminality to see if it would justify commitment for trial in England, if the offense had been committed there and, if satisfied, to certify the fact to the proper executive authority so that a warrant might issue for the surrender of Stilwell.

In the performance of this duty what did the magistrate read and examine? He had in his hands the President's warrant stating that Stilwell was charged " with the crimes of embezzlement and fraud by a bailee, agent and trustee (known in the Laws of the State of New York as grand larceny in the first degree and violation of section 956 of the Penal Code of the State of New York)." He also had a copy of the indictment containing the three counts, the third setting forth fully the acts constituting a violation of section 956 of the Penal Law in that the defendant as a broker had in his possession stock of the Oklahoma Producing and Refining Corporation of America belonging to a customer named Robert E. Lyendecker, and that the defendant for his own benefit disposed of it without the owner's consent. The magistrate must also have read the depositions constituting the evidence sustaining these charges. He formed his conclusions and then acted. He decided that on such evidence the prisoner would be committed for trial, had the thing happened in England. This means that the facts alleged constituted a crime under the laws of England.

The point which the relator makes is that while larceny and embezzlement are conceded to be crimes in both countries, there is no evidence to show that the wrongful hypothecation of stock certificates by a broker is a crime in England as well as in New York. Article I of the

treaty of 1889 above given refers to fraud by a bailee or agent made criminal by the laws of both countries.

We must presume that the London magistrate did his duty and found that the facts alleged in the third count of the indictment and referred to in the President's warrant as " violation of section 956 of the Penal Code " would also violate the law of England, if committed there. If they would not he should not have certified for the prisoner's surrender. The papers clearly stated that Stilwell would be tried for hypothecating securities if he were returned. The higher courts might have reviewed the determination of this magistrate; we cannot. His determination in the absence of fraud is conclusive upon the courts of this country.

Under the terms of the treaty the duty of determining whether the charge made against the relator came within the provisions of the treaty was laid upon the English magistrate and executive authorities and their decision cannot be questioned. The officials of both countries must concur in the conclusion that the offense charged is included in the crimes named or referred to in the treaty, before the fugitive will be surrendered. The chief executive of the United States acting through the Secretary of State requisitioned for the return of Stilwell as an offender against the laws of New York State, specifying section 956 of the Penal Law as the crime he had committed. The authorities of this country certainly believed the section to be one which was covered by the treaty. The proper officials of England examined the charge and surrendered the prisoner. Surely they must have acquiesced in this interpretation, and have considered that the crime defined in section 956 was an extraditable offense as well as the larceny charges.

These determinations by the judiciary and the executives of both countries are conclusive upon two points: *First*, that he was extradited for the crime described in section 956 of the Penal Law of this State; and *second*,

that it was an extraditable offense according to the treaties between this country and Great Britain. (*Cohn v. Jones*, 100 Fed. Rep. 639; *Matter of Rowe*, 77 Fed. Rep. 161; *Greene* v. *U. S.*, 154 Fed. Rep. 401.) The cases of *U. S.* v. *Rauscher* (119 U. S. 407) and *People ex rel. Young* v. *Stout* (81 Hun, 336; affd., 144 N. Y. 699) are not applicable. In the *Rauscher* case the defendant was extradited upon the charge of murder on the high seas under section 5339 of the United States Revised Statutes. He was not tried on that charge but rather upon an indictment under a different section, section 5347 of the Revised Statutes, charging him with cruel and unusual punishment of the same man whom he was alleged to have murdered. The crime for which he was tried was *not* specified in the requisition papers. He was extradited for one offense and tried for an entirely different crime. So also in the *Young* case. The defendant was indicted in New York for assault in the first degree and also assault in the second degree. He was extradited solely for the specified crime of " assault with intent to commit murder." On his trial he was acquitted of assault in the first degree and convicted of assault in the second degree. On habeas corpus proceedings he was discharged on the ground that the court had no jurisdiction to try him for a crime not specified in the treaty and for which a demand had not been made. Personally, I doubt if the courts would go so far in this day of better understanding and more friendly relationships between these two countries.

The wrongful pledging of securities by a broker for his own use and purposes is so closely akin to larceny, even if it be not larceny, that we would be much surprised to find that such acts constituted no offense in Great Britain. Criminal offenses do not always have the same nomenclature in different countries; they are not all the same in our various States. Thus it is stated in Russell on Crimes and Misdemeanors (eighth edition,

vol. II [1923], p. 1187) that a person in lawful possession of personal property as bailee who fraudulently converts the same to his own use steals the same and is guilty of larceny. Hypothecation of securities under the circumstances of this third count would apparently be larceny in England. Thus the offense is a crime in both countries. The orders appealed from must, therefore, be affirmed.

HISCOCK, Ch. J., CARDOZO, POUND, MCLAUGHLIN, ANDREWS and LEHMAN, JJ., concur.

Orders affirmed.